Malachi FIELDS, et al., Plaintiff-Appellee,

v.

CITY OF TARPON SPRINGS, FLORIDA, Defendant-Appellant.

No. 82–5744.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1983.

Allen M. Blake, Tampa, Fla., for defendant-appellant.

David M. Lipman, Miami, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

PER CURIAM:

This appeal contests an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 ("Fees Act"), 42 U.S.C. § 1988 (1980), and The Revenue Sharing Act, 31 U.S.C. 1244 (1976), made by the United States District Court for the Middle District of Florida. A discrimination action was filed against the City of Tarpon Springs in 1977 and voluntarily dismissed in 1981. The discrimination question was never litigated nor compromised. The lawsuit did not yield judicial relief. The district court nonetheless found that the lawsuit had been the catalyst for relief and found that the plaintiffs/appellees had prevailed for purposes of the Fees Act. We affirm the district court's award of attorney's fees.

The questions presented are whether the district court's wholesale adoption of plaintiff's proposed Memorandum of Decision af-

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

fects the standard of review in this court, and whether the district court erred in concluding that appellees were the prevailing party because their lawsuit was the catalyst for actual modification of the city's parks and recreational facilities.

On December 23, 1977 appellees, black residents (class) of Tarpon Springs, filed a class action against the City of Tarpon Springs ("city") and its officials alleging a racially discriminatory policy and practice of spending federal funds.[1] The class also filed an administrative complaint with the Office of Revenue Sharing (ORS) alleging the same discrimination in municipal park and recreational facilities for black residents. The class sought an injunction to assure that park and recreational services available to the black community would be of the quality and quantity as that afforded the white neighborhoods.

While the lawsuit was pending some improvements were made to the parks and recreational facilities in the black neighborhoods. The district court specifically found that Harrison Park was expanded and a new Community Center was constructed as a result of this lawsuit. Numerous other improvements were made to parks serving both the white and black communities, however, the extent to which other improvements were spurred by the lawsuit has not been decided.

In November of 1979, the ORS concluded from an investigation that there was "no racial disparity in the allocation of capital expenditures."[2] On June 19, 1981 plaintiffs voluntarily requested dismissal of their complaint.[3] In support of the requested dismissal, plaintiffs averred that the im-

provements to recreational facilities that they sought had been made. The trial judge granted the requested dismissal.

Plaintiffs' motion to dismiss included the request for attorney's fees that is at issue here. The district court heard argument on the motion in September and held evidentiary hearings in November of 1981. The extensive evidence included expert testimony, photographs, charts, transcripts of City Commission meetings, and correspondence. After hearing the evidence about the cause and extent of park improvements in the black residential neighborhoods the district court awarded plaintiffs attorney's fees. The court's Memorandum of Decision is a photocopy of plaintiffs' proposed order, with the first and last pages re-typed.

■ The city contends that the wholesale adoption of plaintiff's proposed order vitiates the effect of Rule 52(a) and compels this court to make our own factual findings. We disagree. Although the district court's action is not preferred, it does not require us to weigh the evidence *de novo*. *Clark v. Mobil Oil Corp.*, 693 F.2d 500, 501 (5th Cir. 1982); *Odeco, Inc. v. Avondale Shipyards, Inc.*, 663 F.2d 650, 652 (5th Cir.1981); *Kaspar Wire Works, Inc. v. Leco Engineering Machine*, 575 F.2d 530, 543 (5th Cir.1978); *Williamson-Dickie Mfg. Co. v. Hortex, Inc.*, 504 F.2d 983 (5th Cir.1974). This is the law in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The record indicates that the district judge had command of the legal issues and the evidentiary proceedings.[4] During the evidentiary hearings, the district judge often questioned the witnesses.[5] The judge

---

1. The class action was brought under 42 U.S.C. §§ 1983, 2000a et seq. (Public Accommodations Act of 1964), § 2000d et seq. (Title VI of the Civil Rights Act of 1964) and 31 U.S.C. § 1221 (The Revenue Sharing Act). This lawsuit was one of six filed simultaneously against Florida cities. R. Vol. I at 18. The lawsuits were modeled after *Hawkins v. Town of Shaw*, 461 F.2d 1171 (5th Cir.1972).

2. R. Vol. 3 at 610, 633, 657; Vol. 4 at 680, 702, 725, 748.

3. Fed.R.Civ.P. 23(e) & 41(a)(2).

4. *E.g.*, R. Vol. 11 at 7–9; Vol. 12 at 1–25. *See also* R. Vol. 9 at 46–47, 65–72, 87, 96–98; Vol. 10 at 77–78, 84; Vol. 12 at 44–46.

5. *E.g.*, R. Vol. 9 at 28, 33–34, 40–41, 49–51, 55, 62–63, 77, 81, 100; Vol. 10 at 23, 25, 29, 33, 39–40, 42–45, 53–54, 79–83, 85–86; Vol. 11 at 66–72, 74–75, 113–114, 120, 133, 138–142, 150–152, 154–159; Vol. 12 at 15, 26–28, 31–33, 39, 48–49, 54, 62–66.

ruled on the scope and manner of the evidence presented. The district judge was an active arbiter of the dispute. He did not abdicate his adjudicative role. *See United States v. El Paso Co.,* 682 F.2d 530, 540 n. 11 (5th Cir.1982).

■ The Fees Act authorizes the district judge to use his discretion in awarding attorney's fees.[6] Our review therefore only determines if the trial judge abused his discretion in awarding fees.[7] *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1187 (11th Cir.1983).

■ The Fees Act authorizes an award of attorney's fees to the "prevailing party" in a civil rights action such as this one. 42 U.S.C. § 1988 (1980). The law in this circuit recognizes that a party may prevail without obtaining formal judicial relief.[8] *Doe v. Busbee,* 684 F.2d 1375, 1376, 1379 (11th Cir.1982). *Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981); *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir.1980); *Brown v. Culpepper,* 559 F.2d 274, 277 (5th Cir.1977). For example, a party may prevail when remedial action effectively moots the lawsuit before trial. *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981). A party may prevail through settlement or agreement, *Iranian Students Association v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979); *Criterion Club v. Board of Commissioners,* 594 F.2d 118, 120 (5th Cir.1979); or through a consent decree, *Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205 (11th Cir.1983); *Harris v. City of Ft. Myers,* 624 F.2d 1321 (5th Cir.1980).

■ To determine if a party has prevailed when there is no judicial relief this circuit has used the catalyst test. The catalyst test of prevailing party requires showing that the lawsuit is a causal link that prompted some remedial action. *Iranian Students Association v. Sawyer,* 639 F.2d 1160, 1163 (5th Cir.1981).

■ *Robinson v. Kimbrough, supra,* established that a requisite causal connection is gauged by "the nature of the relief obtained, the chronology of events and the role of the civil rights action in activating change." 652 F.2d at 466. The catalyst test only demands that practical relief has been obtained that is factually a causal result of the lawsuit. Under the test it is not inconsistent to find a party that voluntarily dismisses its action has nonetheless prevailed. As a matter of law one may prevail for purposes of the Fees Act even though the action was voluntarily dismissed. *See DeMier v. Gondles,* 676 F.2d 92 (4th Cir.1982).[9]

■ The district court properly applied the catalyst test in this case. He held evidentiary hearings over three days to determine if any improvements had resulted from this lawsuit. Indeed, the majority of the record goes to that issue. The district court found that Harrison Park had been improved and that a new Community Center was developed as a result of this lawsuit. This finding of "practical relief" resulting from the lawsuit is fully supported by the record.

The parties vigorously contest all factual issues. The city relies on the ORS investigation in November, 1979 that found no

---

6. "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1980). The same standard applies for fee awards under 31 U.S.C. § 1244 (1976).

7. Of course, any factual findings made by the district court will be reviewed according to Rule 52(a), the "clearly erroneous" standard. *Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

8. This interpretation is derived from the legislative history of the Fees Act. *Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981).

9. *DeMier* did not apply the catalyst test. We therefore do not embrace the standard of prevailing party it espouses. The case is useful because it too recognizes that a voluntary dismissal does not preclude a finding that the party prevailed. With that portion of the holding we agree.

discrimination in the spending plan.[10] Although the conclusions gleaned from such investigations are admissible, the weight to be accorded this evidence is determined by the factfinder who may properly decide to ignore it. In this case, the "investigation" was a review of documents furnished by the city and an inspection of the particular parks. The district court was apparently unimpressed with this two-page letter. Such is exclusively within that court's jurisdiction.

The class introduced probative evidence showing that changes in the park and recreational facilities in the black community had occurred subsequent to the lawsuit. The trial judge's findings of improvements and causation are supported by this evidence. We cannot hold that the facts found were clearly erroneous.

Appellants also assert that the trial judge should have determined whether the city had a discriminatory spending practice as a prerequisite to awarding fees. The substantive issues in the complaint were dismissed. In effect, appellants would require the court to rule on the ultimate substantive issue (intent to discriminate) as a prerequisite to a fee award. This would necessitate a full trial on the merits. Costs and fees would increase substantially and judicial economy would not be served. The catalyst test for fees only requires a causal connection between the lawsuit and some actual changes effected. The district court found such existed. As was explained in *Robinson v. Kimbrough, supra,* "[t]he fact that defendants in the instant case have never expressly admitted liability is of little consequence since defendants rarely admit responsibility in suits terminated by consent judgments or voluntary actions." 652 F.2d at 465 n. 9.

The district court noted that the causal question under the catalyst test was as difficult as determining discriminatory intent

under *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The district court's analogy prompted appellants to argue that the court misapplied *Davis.* We find no error in the district court's analogy.

We find that the district judge did not abuse his discretion in the amount of fees awarded in this case. Neither party has contested that the amount of the fees awarded was calculated under *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974). Attorney's fees for and the costs of this appeal, plus interest from the district court's judgment of fees can best be handled by motion to this court.

The judgment entered by the district court is AFFIRMED.

---

**10.** Defendant's Exhibit 6. The City was so impressed by the ORS investigation that it cited to the same two-page document seven places in the record. Brief of Appellant at 10. However, two pages are still two pages no matter how often reproduced. This informal investigation does not create any presumptions or conclusions about discrimination in the district court and the district judge was solely responsible for deciding what weight it deserved.